cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION TO ENFORCE ADMINISTRATIVE SUBPOENAS OF | ) ) ) ) | Civil No.07CV0772 WQH (AJB) |
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Order Following Evidentiary Hearing Granting Petitioner's Motion to Compel Respondents Compliance With Administrative Subpoenas and Denying Respondents' Motion to Quash [Doc. Nos. 1 and 5] |
| Petitioner, v. | ) ) ) ) | |
| MICHAEL NICITA and EDWARD LEONARD, | ) ) ) | |
| Respondents. | ) ) | |

The Securities and Exchange Commission ("SEC") seeks to enforce administrative subpoenas for documents and testimony served on Michael Nicita[1] and Edward Leonard[2] (collectively hereinafter "Respondents").  This matter involves the SEC's investigation of alleged fraudulent schemes to manipulate the earnings of Advanced Marketing Services ("AMS") from at least 2000 until 2003. Mr.

---

[1] On November 7, 2006, the SEC served a subpoena on Michael Nicita, which required Mr. Necita to produce all relevant documents by November 24, 2006 and provide sworn testimony by December 12, 2006.  The SEC agreed to extend the deadline for production of documents by Mr. Nicita to January 12, 2007.

[2] On January 29, 2007, the SEC served a subpoena on Edward Leonard, which required Mr. Leonard to produce all relevant documents by February 14, 2007 and provide sworn testimony by March 5, 2007.

1

1  Nicita was AMS's Chief Executive Officer and Mr. Leonard was AMS's Chief Financial Officer during
2  this period.

3       In January of 2003, AMS management learned of the potential accounting fraud and undertook an
4  internal investigation that resulted in a report stating that the accounting fraud was immaterial. That
5  report was included in the FORM 10-K filed with the SEC on June 30, 2003.  On July 23, 2003, the FBI
6  executed a search warrant at AMS's Headquarters. AMS subsequently decided to cooperate with SEC's
7  investigation, waived privilege and produced over six million pages of documents to the SEC.  Respon-
8  dents' contend that during this production, AMS produced documents that were attorney-client privilege
9  based upon a joint defense agreement ("JDA") that was orally entered into between Respondents and
10  AMS in August of 2003.

11       Respondents' move to quash these subpoenas on the basis that the SEC was in possession of
12  documents Respondents' argue were attorney-client privileged and that the SEC's possession of these
13  documents has irreparably tainted the SEC's investigation and issuance of the subpoenas.  Respondents'
14  move the Court for an Order requiring the SEC to return the materials listed on Respondents' privilege
15  log to Advanced Marketing Services ("AMS") and disqualifying all SEC attorneys' and investigators
16  who have had access to these materials.  The Respondents requested an evidentiary hearing to further
17  explore the depth of the taint to the SEC investigation and an interim stay on enforcement of these
18  subpoenas pending this Court's findings from the evidentiary hearing.  Respondents also requested that
19  the Court find that they had proven the existence and terms of the Joint Defense Agreement ("JDA").
20  Alternatively, the Petitioner requested that the Court require Respondents to submit sworn affidavits
21  from each of the members of the JDA and a Board resolution confirming AMS agreed to be bound by the
22  JDA.

23       An evidentiary hearing was set for January 11, 2008 for Respondents to provide the Court with
24  evidence demonstrating: 1) the parties, terms and duration of the JDA, and 2) that AMS's Board agreed
25  that the company should be bound by the JDA.  Respondents were further ordered to revise their
26  privilege log and produce copies of the revised privilege log and any sworn affidavits Respondents
27  intended to rely on at the evidentiary hearing to the Court and Petitioner on or before December 28,
28

07cv0772

2007.  In addition to the declarations and revised privilege log, Respondents submitted categories of documents from the privilege log for in camera review by the Court.

## I.   *Findings From the Evidentiary Hearing*

The evidentiary hearing was held on the record before Judge Battaglia on January 11, 2008. Appearing on behalf of the Petitioner was Molly White and Ronnie Lasky.  Charles La Bella and Teresa Gillis appeared on behalf of Respondent Michael Nicita and Christian Humphreys appeared on behalf of Respondent Edward Leonard.

Based upon the record[3] and the declarations[4] submitted by Respondents, the Court finds:

1. A JDA was orally entered into by and between AMS and Respondents Nicita and Leonard.

2. Respondents have failed to submit any evidence to support their prior contentions[5] that Kevan Lyon (represented by Hahn & Adema); Laurie Lingol (represented by Morrison & Forrester); Marty Vrable (also represented by OMM); Marcy Roke (represented by Frank Vecchione); Sandra Christie (represented by Fish & Richardson); and Steve Boyle (represented by OMM) were parties to the JDA.[6]

---

[3] In the record to date, the Court cites to the following in further support of its findings:
1) the draft JDA submitted for *in camera* review, which only lists AMS and Respondents as parties to the agreement; and
2) Mr. Brewer's declaration which states in paragraph 3 that his firm was in communication with Charles La Bella of La Bella & McNamara (counsel for respondent Michael Nicita), and William Bisset of Hughes, Hubbard & Reed (counsel for AMS) regarding the terms of a Joint Defense Agreement ("JDA"). . . The terms of the JDA were reduced to writing and circulated by HH&R to the members for their approval," and
3) Other alleged members of the JDA have not invoked or mentioned JDA when asked to provide testimony or documents by the SEC.

[4] Declarations submitted and relied upon by Respondents: 1) Trygve Mythren - Former member of the Board of Directors for AMS; 2) Edward Little - Attorney with HH&R that represented AMS; 3) William Bisset - Attorney with HH&R that represented AMS (alludes to other members); 4) Teresa Gillis - Attorney with La Bella & McNamara - counsel for Respondent Nicita; 5) Charles La Bella - Attorney with La Bella & McNamara - counsel for Respondent Nicita; 6) Robert Brewer - Attorney with McKenna, Long & Aldridge - counsel for Respondent Leonard.

[5] Respondents' Opposition [Doc. No. 6], at page 3, footnote 1.

[6] The SEC requested that Respondents be required to submit declarations from each of the members of the JDA and the Court agreed.  The Court notes that Respondents only submitted declarations from AMS and Respondents' counsel, citing an inability to provide others despite significant effort.

07cv0772

1    3.      The JDA was in effect from approximately August 2003 until February 2004.

2    *II.    Discussion*

3    With the parties and terms of the JDA determined, the Court can now review 1) Respondents'

4    claims of privilege with regard to the various categories of documents set forth in the privilege log; 2)

5    Respondents' allegations of taint regarding the SEC's investigation and request for return of privileged

6    documents and Respondents' request that the Court quash the administrative subpoenas and disqualify all

7    SEC attorneys' and investigators who have had access to the privileged documents; and 3) Petitioner's

8    request for enforcement of the administrative subpoenas.

9    *A.      Respondents' Claims of Privilege*

10   Respondents' privilege log categorizes the documents, separating them into categories A through

11   E. Categories D and E are designated by the Respondents as privileged as to AMS only or as not

12   privileged and were to be removed from the privilege log.  Respondents maintain their claims of

13   privilege as to categories A, B, B1, and C.  The Court will also consider the documents designated in the

14   "*" (asterisk) category, which are documents that the SEC has agreed to delete from its database.

15   Upon review of the documents in categories A, B and *, the Court finds these categories of

16   documents to be privileged communications as to the Respondents, because these communications were

17   either communications solely between Respondents and their respective counsel or communications

18   between members of a joint defense, namely Respondents' counsel and AMS.  In either case, the content

19   meets the standard of attorney client privilege.

20   However, with regard to Respondents' claims of privilege for categories B1 and C, the Court

21   finds that Respondents have failed to meet their burden to establish an underlying privilege. The joint

22   defense privilege is "not an independent basis for privilege, but an exception to the general rule that the

23   attorney-client privilege is waived when privileged information is disclosed to a third party." *Cavallaro*

24   *v. United States*, 284 F.3d 236, 250 (1st Cir. 2002); E.S. Epstein, The Attorney-Client Privilege and the

25   Work-Product Doctrine 168-69, 194 (4th ed.2001).

26   Respondents' allege that documents in category B1 are privileged attorney-client communications

27   and attorney work product involving counsel for AMS advising Respondents with respect to their

28   personal rights and liabilities.  There are only three pages of documents in this category, which include 2

4

1  copies of an email from AMS counsel to Respondents' on August 1, 2003, enclosing an article on the

2  implications of CEO and CFO certifications and the other is an email from AMS counsel to Respondents

3  on August 1, 2003, enclosing a preliminary draft of the language to be included in the Form 10-Q as Item

4  1 under Legal Proceedings with regard to the investigation.  These communications do not include

5  opinion or legal advice and are merely forwarding public documents to the Respondents.

6           After the July 23, 2003 execution of the search warrant by the FBI, AMS counsel recommended

7  that AMS officers retain independent counsel to avoid any potential conflicts of interest.  Promptly

8  thereafter, both Respondents' retained private counsel in August 2003, so there does not appear to have

9  been any direct attorney-client relationship between AMS counsel and Respondents.[7]

10          In determining whether a corporate officer may claim an attorney-client privilege in

11 communications with the corporation, the burden rests with the individual to evidence the privileged

12 nature of the communications they seek to protect. *See United States v. Bay State Ambul. & Hosp. Rental*

13 *Serv., Inc.*, 874 F.2d 20, 28 (1st Cir.1989). Respondents have not met this burden.  AMS advised

14 Respondents to retain separate counsel after the July 23, 2003 search by the FBI and Respondents' did,

15 and shortly thereafter discussions began regarding the JDA.  These communications would not be

16 protected under the JDA, because the JDA had not been orally agreed to by the parties as of August 1,

17 2003.  As such, the Court finds that the documents in category B1 are not privileged.

18          With regard to the documents in category C, Respondents claim these documents are privileged

19 attorney-client communications and attorney work product involving AMS counsel and joint

20 defense/common interest efforts participated in by Respondents.  The Court finds Respondents' have

21 failed to meet their burden of establishing the privileged nature of these communications for several

22 reasons.  First, Respondents have not established that there was any attorney-client relationship between

23 them and AMS counsel.  In fact, Respondents' counsel's declaration states that Respondents were

24 instructed by AMS counsel after the July 23, 2003 search by the FBI to retain independent representation

25 to avoid any potential conflicts. *See* Decl. Charles La Bella, [Doc No. 6-4], at 2.  Second, Respondents'

26

27          [7] Furthermore, the because the attorney-client privilege withholds relevant information from the
   fact-finder, it protects only those communications necessary to obtain informed legal advice, which

28 might not have been made absent the privilege. *Fisher v. United States*, 425 U.S. 391, 403 (1976); see 8
   Wigmore, Evidence § 2291 (McNaughton rev. 1961).

1  retained counsel were not involved in any of the communications in category C, and Respondents'

2  counsel freely admitted during the hearing on January 11, 2008 that AMS counsel knew that Respondents

3  were represented and would not have spoken directly with Respondents regarding their liabilities or

4  defenses as a result.  Third, the documents in category C represent Respondents' participation as

5  corporate officers in the business affairs of AMS.  Respondents had a fiduciary duty as corporate officers

6  to assist AMS in the investigation and defense of matters pertaining to the employer's business. *See*

7  *United States v. Sawyer*, 878 F. Supp. 295, 296 (D. Mass.1995).

8       In *In re Bevill*, the Third Circuit set forth a test that enumerates five benchmarks that corporate

9  employees seeking to assert a personal claim of attorney-client privilege must meet.[8]  The fifth prong of

10  *In re Bevill*, properly interpreted, precludes an officer from asserting an individual attorney client

11  privilege when the corporate officer's communication concerns the corporation's rights and

12  responsibilities.[9]  These communications would only be privileged as to AMS, and AMS has waived

13  privilege with respect to these communications. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1101-04 (5th

14  Cir.1970).

15       In addition to the reasons set forth above, Respondents also face difficulties with regard to the

16  forth prong of *In re Bevill* where copies of documents claimed to be privileged were provided to other

17  corporate officers or third parties, thereby destroying the confidentiality required to maintain their claims

18  of privilege. *See In the Matter of Bevill*, 805 F.2d at 123.  Since the Court has found that only AMS,

19  Necita and Leonard were parties to the JDA, the sharing of any privileged documents with any other

20

21

---

22  [8] First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were

23  seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing

24  that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. **And fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company**. *In re Bevill, Bresler*

25  *& Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir.1986); *accord Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1041 (10th Cir.1998); *United States v. Int'l Bhd. of Teamsters*, 119 F.3d

26  210, 215 (2d Cir.1997); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir.1994).

27       [9] *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir.1986); *accord Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1041 (10th Cir.1998); *United States v. Int'l*

28  *Bhd. of Teamsters*, 119 F.3d 210, 215 (2d Cir.1997); *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir.1994).

07cv0772

1  corporate officers or third parties would destroy the confidential nature of these documents and they

2  would no longer be privileged.

3      For all the aforementioned reasons, the Court finds the documents in category B1, C, D and E are

4  not privileged as to the Respondents.  Documents in categories in A and B are privileged.  The SEC shall

5  delete or destroy all copies these documents in categories A, B and *.

### B.  Respondents' Allegations of Taint Regarding the SEC's Investigation and Request for Return of Documents Produced by AMS to the SEC

8      Respondents contend that the SEC's possession of documents produced by AMS, which

9  Respondents' argue are attorney-client privileged, has irreparably tainted the SEC's investigation and

10 issuance of the subpoenas.  Respondents contend that the SEC subpoenas "are the fruit of hundreds of

11 privileged documents improperly turned over to the SEC" by AMS.  (*See* Doc. No. 6, Resp. Opp., at p.

12 2.)  Respondents argue that the "SEC's investigation is already hopelessly tainted by the privileged

13 material it has held for years, and no doubt utilized during the course of its investigation." *Id.* at 8.

14 Respondents claim that their privilege would be further violated "by allowing the SEC's continued use of

15 these privileged documents in questioning Respondents during the course of the depositions." *Id.* at 2, 8.

16     In response, the SEC argues that Respondents' allegations of taint are without merit. The SEC's

17 investigation focuses on events that occurred before July 23, 2003, when the FBI conducted a search of

18 AMS's headquarters.  The documents contained in Respondents privilege log all post date July 23, 2003,

19 and therefore are only marginally relevant, if at all, to the SEC's investigation. (*See* Declaration of Molly

20 M.White Supporting Supplemental Brief at ¶ 7; Declaration of Ronnie B. Lasky Supporting

21 Supplemental Brief at ¶ 12.)

22     When asked to identify what if any documents from Respondents' privilege log the SEC has

23 relied on to date, the SEC identified nine (9) investigative exhibits.[10]  Of these, four have been removed

24 from the privilege log or identified as not privileged, and the remaining documents are all category "C"

25 documents on the privilege log, which the Court has determined are not privileged as to the Respondents.

26 The Court finds that none of the nine documents relied upon by the SEC are privileged as to

---

28     [10] The nine (9) investigative exhibits used by the SEC correspond to the following documents on Respondents' privilege log: Doc. Nos. 452, 456, 733-739, 928, 962, 1044, 1061, 1063, 1133, 1157, 1158-1160, 1166 and 1182.

07cv0772

1  Respondents.  Furthermore, the SEC has offered to segregate the documents listed on Respondents'

2  privilege log and to refrain from using or relying on all of those documents in its investigation.

3        Based upon the foregoing, the Court finds Respondents claims of taint to be without merit. There

4  has been no evidence presented that the SEC's staff has engaged in any misconduct to obtain the

5  documents at issue, a fact Respondents' readily agreed with at the evidentiary hearing.  While some

6  privileged material was inadvertently produced by AMS to the SEC, this privileged material was buried

7  among the roughly six million pages of documents produced by AMS in this investigation.  Furthermore,

8  there has been no evidence presented that shows that the privileged documents in any way effected the

9  course or scope of the SEC's investigation.[11]  To the contrary, the fact that the SEC's investigation

10  focuses on a period that predates the privileged documents, that none of the documents used to date has

11  been privileged as to Respondents, and the fact that the SEC has agreed to refrain from using or relying

12  on all those documents in its investigation, clearly demonstrate that the inadvertent disclosure by AMS of

13  Respondents' privileged documents has not tainted the SEC's investigation.

14        As such, Respondents' motions to quash and or stay these subpoenas is DENIED.  Respondents'

15  request that the Court disqualify all SEC attorneys' and investigators who have had access to the

16  privileged documents is DENIED since the disclosure was inadvertent and did not change the course or

17  scope of the SEC's investigation.

18              ***C.       Petitioner's Request for Enforcement of the Administrative Subpoenas***

19        The standard for judicial enforcement of administrative subpoenas is set forth by the Supreme

20  Court in *United States v. Morton Salt Co.*, 338 U.S. 632 (1950). The Court stated that an agency's

21  investigation is lawful if "the inquiry is within the authority of the agency, the demand is not too

22  indefinite and the information sought is reasonably relevant." *Id.* at 652; *see also United States v. Stuart*,

23  489 U.S. 353, 360 (1989).

24        The Ninth Circuit has stated that the scope of our inquiry into an agency subpoena is narrow.

25  *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir.1996); *see also EEOC v. Children's*

26  *Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir.1983) (en banc). Generally, a court must ask

27

28        [11] *U.S. v. Smith*, 155 F.3d 1051, 1062-62 (9th Cir. 1998) (*citing U.S. v. Carsello*, 578 F.2d 199,
     2003 (7th Cir. 1978); *U.S. v. Cales*, 493 F.2d 1215, 1216 (9th Cir. 1974)).

07cv0772

1  "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have

2  been followed; and (3) whether the evidence is relevant and material to the investigation." *Children's*

3  *Hosp.*, 719 F.2d at 1428. An affidavit from a government official is sufficient to establish a prima facie

4  showing that these requirements have been met. *See Stuart*, 489 U.S. at 360. Finally, "[i]f the agency

5  establishes these factors, the subpoena should be enforced unless the party being investigated proves the

6  inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp.*, 719 F.2d at

7  1428.

8       The Petitioner met the requirements set forth above in filing the ex parte application to compel

9  compliance with the administrative subpoenas [Doc. No. 1] filed on April 27, 2007. Since the

10  Respondents have not demonstrated any reason why these subpoenas should not be enforced, the Court

11  hereby ORDERS Respondents' immediate compliance with the administrative subpoenas.

12       ***III.    Conclusion***

13       For the reasons set forth herein, the Court finds that a JDA existed between the Respondents and

14  AMS from August of 2003 until February of 2004. Upon review of Respondents' privilege log and the

15  categories of documents submitted for in camera review, the Court finds that the documents in categories

16  A, B and * are privileged communications as to the Respondents and documents in categories B1, C, D

17  and E are not privileged as to the Respondents.  As such, Petitioner shall delete and destroy all copies of

18  documents in categories A, B and * set forth in Respondents' privilege log forthwith and confirm same in

19  writing to Respondents' cousel.  Respondents request to disqualify members of Petitioner's staff is

20  DENIED.  Respondents motions to quash or stay the administrative subpoenas is DENIED.  The Court

21  hereby ORDERS Respondents' immediate compliance with the administrative subpoenas.  Counsel are

22  ORDERED to meet and confer within ten days from the date of the order to schedule the depositions and

23  Respondent's compliance with the administrative subpoenas.

24       IT IS SO ORDERED.

25

26  DATED:  January 16, 2008

27  _____

28  Hon. Anthony J. Battaglia
    U.S. Magistrate Judge
    United States District Court

07cv0772

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28